**MIRIAMA N. TUITASI and TOILOLO FERETI, Plaintiffs**

**v.**

**LAUOFO T. KITIONA and AMITUANI N. IOSEFA, Defendants**

High Court of American Samoa
Land and Titles Division

LT No. 3-92

November 29, 1993

Before RICHMOND, Associate Justice, TAUANUʻU, Chief Associate Judge, and LOGOAI, Associate Judge.

Counsel: For Plaintiffs, Albert Mailo
 For Defendants, Tautai A.F. Faʻalevao

This action began as a land document registration case and evolved to also become a land title registration case. In both respects, land ownership was the underlying issue. Opportunity is also provided for interpretation and comment on the application of certain land tenure laws, as modified in 1989.

Trial took place on September 23, 24, and 27, 1993. Plaintiff Toilolo Fereti ("Toilolo") was present with counsel throughout the trial. Defendants Lauofo T. Kitiona ("Lauofo") and Amituanai N. Iosefa ("Amituanai") were also present with counsel.

## FINDINGS OF FACT

On or immediately before August 1, 1991, Lauofo, as lessor, and Amituanai, as lessee, signed a lease of a 0.22-acre plot within communal land named "Uʻutafeuua," situated in the Village of Malaeloa, American Samoa. The survey of this plot was approved on July 24, 1991. The term of the lease was 55 years, commencing August 1, 1991, and ending July 31, 2046. Lauofo is the senior matai or saʻo of the Lauofo family and signed the lease for himself and on behalf of the family. The plot was leased for residential purposes, and the parties intended to have the leasehold serve as collateral for a bank construction loan.

■ The lease was filed with the Territorial Registrar on August 1, 1991. The Land Commission's notice of the lease was posted on four utility poles in Malaeloa and on the front of the courthouse for a period of 61 days, beginning August 5, 1991, and ending October 4, 1991. Because the affidavit of posting was sworn to and subscribed by a member of the Territorial Registrar's staff on August 5, 1991, the beginning day of the period, it proves nothing more than that the notice was posted on that day.

The notice provided for the filing of objections to the lease with the Territorial Registrar in his capacity as secretary of the Land Commission during the notice period, before the Commission forwarded a recommendation to the Governor respecting his approval or disapproval of the lease. Miriama N. Tuitasi filed an objection on August 28, 1991. Toilolo filed one on October 2, 1991.

As the Territorial Registrar has been accustomed to doing for a long time, according to Chief Assistant Territorial Registrar Starr Schuster, the lease was referred to the Secretary of Samoan Affairs on October 29, 1991, for dispute resolution proceedings under A.S.C.A. § 43.0302. On January 21, 1992, the Deputy Secretary of Samoan Affairs issued a certificate of irreconcilable dispute. On February 3, 1992, the Territorial Registrar forwarded the matter to this Court, and this action was commenced by the notice issued by the Clerk of Courts on August 5, 1992.

A second survey of 0.349 acres, encompassing the same plot, was approved on July 1, 1993. The accompanying surveyor and pulenu'u certificate was issued on June 30, 1993, and the proposed title registration was offered to the Territorial Registrar on July 9, 1993. On July 12, 1993, the Territorial Registrar posted the notice of this proposed registration on three telephone poles in Malaeloa and at the courthouse for a 60-day period, beginning July 12, 1993 and ending September 10, 1993.

The first affidavit of posting for this notice was also executed by a member of the Territorial Registrar's staff at the beginning rather than at the end of the notice period. A second affidavit, signed by the same staff member on November 2, 1993, confirmed the posting for the 60-day period. The notice was published in the Samoa Journal & Advertiser, a local newspaper, on July 20, 1993, and September 28, 1993. The affidavit of this publication was signed on October 22, 1993.

On September 7, 1993, Toilolo also objected to this registration, and on September 17, 1993, it was referred for dispute resolution to the Secretary of Samoan Affairs. Although this process has not been separately completed for this registration, the parties stipulated that the certificate of irreconcilable dispute already on file in connection with the lease registration, and encompassing the same underlying land ownership issue, would serve to enable the Court to decide both registration matters.

Physically, "U'utafeuua" lies along the north side of the semi-circular, public road that extends northward from the main public road in Lepuapua towards the eastern part of the Village of Leone, through Malaeloa, and then back southward to the main public road near the population center in the western part of Leone.

Across a stream, east of "U'utafeuua" lies communal land, known as "Pulemaava," of the Toilolo family, as determined by *Malepeai v. Faatupu*, LT No. 10-81 (Land & Titles Div. 1983), *aff'd Faatupu v. Malepeai*, AP No. 7-84 (App. Div. 1984). East to west, "U'utafeuua" is occupied by Lauofo family members, the Malaeloa Congregational Christian Church, Amituanai (the plot at issue), and Lauofo. Continuing eastward is land named "Talitiga," which is separated from "U'utafeuua" by a road leading to the mountain and which, east to west, is occupied by Toilolo, Taulapapa, and Amituanai's guest house. Next westward is communal land of the Tuilefano family. Across the north or mountain side of "U'utafeuua" and "Talitiga" stretches communal land of the

60

Amituanai and Nanai families, called "Asipapa" and occupied by members of these families.

Toilolo and his witnesses claimed that Lauofo is a talking chief or tulafale under the Toilolo title of Malaeloa, even though the present Lauofo refuses to render traditional service or tautua to him, and that all lands occupied by Lauofo and his family are under Toilolo's control or pule. This claim is based substantially on Toilolo family history, which holds that the Lauofo title and Lauofo's right to use certain lands, including "U'utafeuua," was created by the present Toilolo's grandfather, when he held the Toilolo title, as a reward for the original Lauofo's friendship and tautua.

On the other hand, Lauofo and Amituanai claimed that the Lauofo title has a background in Tafuna and before that in the Manu'a Islands. It became a recognized title in Malaeloa through the marriage of a male member of the Lauofo family with a female member of the Amituanai family and marital residency in that village. Amituanai family tradition holds that the extended Amituanai family of Malaeloa includes the Amituanai, Nanai and Lauofo families and that the Lauofo title is under and renders tautua to the Amituanai title. In addition, each of these three families owns separate communal lands, but the members of the other two families have mutual rights to use these lands with the permission of the sa'o exercising immediate pule over the land.

Unquestionably, Lauofo titleholders have exerted pule over "U'utafeuua" in significant ways for many years, until now without any objection from the Toilolo in office. Transactions of record include separation agreements that were entered by a Lauofo and, in one instance, a Nanai and recorded with the Territorial Registrar in 1963, 1965, 1967, and 1968, pursuant to A.S.C.A. §§ 37.1501 et seq. or their predecessor statutes. Lease agreements were entered and recorded with the Registrar in 1990 and 1991, pursuant to A.S.C.A. §§ 37.0201 et seq.

In 1993, under A.S.C.A. §§ 37.0101 et seq., title to the plot of "U'utafeuua" where the Malaeloa Congregational Christian Church is located was registered as Lauofo communal land. At the time of this trial, pursuant to A.S.C.A. §§ 37.0201 et seq., Lauofo's deed of conveyance of this plot to the Church was ready to be considered at a Land Commission hearing, following completion of the public notice period. During this period, Toilolo did not object.

61

Toilolo attributed his silence in the face of these transactions to the positive relationship between the former holders of the Lauofo and Toilolo titles. Toilolo took office in 1971 and Lauofo in 1977. Thus, this explanation does not hold up for the 1990 and 1991 leases. We believe that Toilolo's antagonism towards Lauofo and Amituanai, which was reciprocated, and not any legitimate Toilolo claim to the title of "U'utafeuua" brought about this lawsuit.

In sum, the evidence of family histories and traditions and of pule, occupancy, and use convincingly established that the plot within the land "U'utafeuua" at issue is the communal land of the Lauofo family.

## CONCLUSIONS OF LAW

1. Having found that "U'utafeuua" is owned by the Lauofo family as communal land, Lauofo may register the title to the plot at issue and a lease of that plot. However, we still need to review the validity of the land title and document registration procedures followed with respect to both registrations.

■ 2. In this case, land title registration was initiated after rather than before seeking document registration of the proposed lease. While title registration is not a prerequisite to the validity of a document alienating an owned interest in land, it is a logical first step. We will consider the title registration process first.

■ The problem here was the adequacy of the notice given after the plot was duly surveyed and the title to it was offered for registration. The offered title registration must be noticed for 60 days by posting at the courthouse in the Village of Fagatogo and at two public places in the village in which or nearest to which the land is located, and by publication of the notice in a local newspaper at least once every 30 days during the 60-day period. A.S.C.A. § 37.0103(a). The applicant must provide the territorial registrar with "notarized statements," which we interpret to mean affidavits, by the Clerk of Courts and village mayor or pulenu'u and from the newspaper, each stating that within his or her sphere the required notice was given. A.S.C.A. § 37.0103(c).

■ Strict compliance with these requirements was not achieved. The posting and publishing were done, but the second publishing occurred after the 60-day period. In addition, affidavits by the Clerk of Courts and Pulenu'u are lacking, being replaced by the affidavits by a member of the Territorial Registrar's staff. The staff member's original affidavit

certifying to posting at the courthouse and in the village was, as already noted, deficiently executed on the day of posting rather than after the 60-day notice period.[1]

However, substantial compliance was realized. The notice of proposed title registration was given by the three methods required. It was posted for the prescribed time period and published once during this period. The affidavit of posting was executed by a public official accustomed by long-standing practice to carrying out this role. The affidavit of publication was signed by the publisher of the newspaper.

Most importantly, the principal objector, Toilolo, knew of the proposed title registration and timely made an adverse claim. Moreover, the dispute was properly referred to the Secretary of Samoan Affairs for dispute resolution procedures under A.S.C.A. § 43.0302. Finally, Toilolo stipulated to using the failed dispute resolution proceedings and the Secretary of Samoan Affairs' certificate of irreconcilable dispute in connection with the proposed lease registration process as satisfying this requirement for purposes of the title registration dispute. He also did not interpose any objections to any other procedural irregularities or the factual foundations for these steps.

Therefore, we conclude that the title registration process has been adequately completed and that Lauofo is entitled to have the Territorial Registrar register the title to the plot of the land "U'utafeuua" at issue as the communal land of the Lauofo family.

 This is not to say, however, that the public authorities handling these procedures can expect to ordinarily receive judicial recognition of their faulty acts. The Territorial Registrar is well-advised to adopt revised, separate affidavits of posting and publications for each of the three, required means of notice, to replace the outmoded affidavit form still in use. In the public interest, the Registrar should also establish procedures that will ensure that the Clerk of Courts, pulenu'u, and newspaper actually post or publish the necessary notices and provide the

---

[1] Affidavits of posting were also executed on the first day of posting in connection with both of the other two leases admitted into evidence in this action. The records of the various separation agreements admitted do not include affidavits of posting.

required affidavits,[2] executed after the fact. The registrar should continue to oversee proper initiation and completion of the notice requirements.

3. Next, we turn to the land document registration process. Here, the concern is with the procedures regarding notice and the referral to the Secretary of Samoan Affairs.

■ The document registration and title registration laws are materially different. Strictly, no statute requires either posting or publication of any notice when a document alienating an interest in communal land is proposed for registration under A.S.C.A. § 37.0210. Wisely, the Territorial Registrar has followed the same 60-day posting procedure as required for title registration. Perhaps this practice originated from or before the time when all laws related to private real property rights were codified in one chapter. *See* Code of American Samoa §§ 901 et seq. (1949).[3] Posting for 60 days was done in this case, but again the affidavit of posting was executed on the day posting began and not after the period was completed.

Apparently, the Registrar has also implemented the 1989 newspaper publication law for document registrations as well, even though this procedure is not statutorily required. However, publication was not accomplished in this case. Both posting and publication could be required by administrative rules adopted under the Administrative Procedures Act. A.S.C.A. § 4.1001 et seq. The Land Commission has rule making authority pursuant to A.S.C.A. § 37.0203(d). However, according to the Chief Assistant Territorial Registrar, the Land Commission has never exercised this authority, and no such rules exist.

---

[2] A.S.C.A. § 37.0103(c) does not identify the newspaper representative who should execute the affidavit of publication. Presumably, in the absence of more explicit direction, the newspaper owner, publisher, editor, or some other employee or agent stating his or her authority should sign the affidavit.

[3] The land alienation and title registration laws were separately codified at lease as early as the effective date of the Revised Code of American Samoa, Chapters 9 and 10 (1961 ed.). These laws were readopted in this separate manner by the Legislature of American Samoa by enactments during the 16th and 17th Legislatures and the Governor's approvals, in conformance with Article 1, Section 3, and Article II, Section 9, of the Revised Constitution of American Samoa. P.L. 16-88 (1980) and P.L. 17-31 (1982).

In any event, without statutory mandate, any lack of notice or notice deficiency is meaningless for purposes of registering the proposed lease. Moreover, Toilolo did object to the proposed lease, and his objection did not go unheeded but was directed by the Registrar, without the Land Commission's involvement, to the Secretary of Samoan Affairs for dispute resolution proceedings.

■ The propriety of this reference to the Secretary requires discussion and clarification. It appears from the evidence that, again for many years, the Territorial Registrar has also been automatically making this referral when an objection to a proposed document registration is filed within the 60-day, posted notice period. Since no statute compels such routine referral in document registration matters, the Registrar should not do so habitually. Objections are properly forwarded to the Secretary only if referrals are required by administrative rules promulgated or orders issued on a case-by-case basis by the Land Commission, or pursuant to specific authority delegated by the Commission to the Registrar. See A.S.C.A. § 4.0131.

■ The Land Commission should establish the policies on such matters as to whether referrals to the Secretary of Samoan Affairs are made only when a disputed title underlies the document sought to be registered or in other circumstances as well, or whether the intent is to facilitate prerequisites to litigation under A.S.C.A. § 43.0302 or to simply promote settlement. Ultimately, however, the process must not frustrate A.S.C.A. §§ 37.0203, 37.0204, 37.0221, and 37.0222, which require the Commission to formulate recommendations to the Governor and the Governor's final approval or disapproval of the proposed transaction.

ORDER

1. The plot within the land "U'utafeuua" at issue is the communal land of the Lauofo family, and Lauofo may lease this plot.

2. The Territorial Registrar is directed to register the title to this plot as the communal property of the Lauofo family.

3. The proposed lease of this plot by Lauofo, as lessor, to Amituanai, as lessee, is remanded to the Land Commission for a hearing to develop a recommendation to the Governor, consistent with the Lauofo family's communal ownership of this plot, and to forward that recommendation to the Governor for his approval or disapproval of the proposed lease.

Judgment is entered accordingly.

It is so ordered.